refunding of the price paid—that is to say, the recovery of the note—restore to them the expense they had incurred by reason of the plaintiff's fraud, a consequence which the plaintiff must have known the defendants would suffer. Warren v. Cole, 15 Mich. 265; Kimball & Austin Mfg. Co. v. Vroman, 35 Mich. 310, 24 Am. Rep. 558 (a case of false warranty); Atlanta, etc., R. Co. v. Hodnett, 29 Ga. 461; 14 A. & E. Encycl. of L. 178. In Wilson v. New U. S. Cattle Ranch Co., 36 U. S. App. 634, 73 Fed. 994, 20 C. C. A. 241, Judge Sanborn stated the rule as follows:

"Upon a rescission of a contract, the measure of damages is the consideration paid, and the moneys naturally expended on account of the purchase before the fraud was discovered."

A witness named Cederstrom was called by defendants as an expert to prove the value of the engine, the object being to repel a contention made by the plaintiff that the hull was not included in the purchase but was thrown in as a gift, by showing that the boiler, engine, and other machinery would not be worth anything like the purchase price. It was objected that the testimony was incompetent because there was no such issue. But the contention of the plaintiff just stated did raise such an issue. However, the testimony on this subject was wholly immaterial, and could have done no harm, for the contract, which was in writing, expressly included the hull as one of the articles sold for the lump sum of $3,300.

The judgment must be affirmed, with costs.

---

## HUBERT v. CITY OF NEW ORLEANS.

(Circuit Court of Appeals, Fifth Circuit. April 5, 1904.)

No. 1,251.

1. FEDERAL COURTS—JURISDICTION—DIVERSE CITIZENSHIP—RECEIVERS—RIGHT TO SUE—SUCCESSORS.

Where, after a foreign receiver, appointed by a state court, had brought suit in the Circuit Court of the United States sitting in Louisiana against a city of that state, his authority to prosecute the suit was annulled by the Supreme Court of the state, the Circuit Court had no jurisdiction to permit the continuance of such suit by a citizen of Louisiana, appointed as such receiver's successor after his death.

2. SAME—AUTHORITY TO SUE.

Where a receiver, appointed by a state court, was authorized to demand and receive any and all sums which may have been or might thereafter be collected or received on account of a certain police board tax for certain years, and thereafter the authority was enlarged so as to include all the assets, claims, and taxes owned and collected by or due to such board prior to 1879, such authority was not sufficient to give the receiver the right to sue to recover such assets or claims.

¶ 1. Diverse citizenship as ground of federal jurisdiction, see notes to Shipp v. Williams, 10 C. C. A. 249; Mason v. Dullagham, 27 C. C. A. 298.

¶ 2. Suits by and against receivers of federal courts, see note to J. I. Case Plow Works v. Finks, 26 C. C. A. 49.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

The following is the statement of the case and the opinion below:

On April 3, 1890, R. F. Harrison, a citizen of Mississippi, alleging himself to be receiver of the Board of Metropolitan Police by appointment of the late Third District Court for the parish of Orleans, La., filed suit No. 11,899 in this court, averring that by certain acts of the Legislature of Louisiana creating the board it was made the duty of the city of New Orleans to levy and collect a certain special tax for the support of the officers and members of said board; that the city owes the board a balance of $118,057.49 and interest because of said taxes. On May 31, 1890, the receiver, by a supplemental petition, increased his demand to $940,379.66 and interest. On November 17, 1902, Louis A. Hubert, alleging himself to be the duly appointed and qualified receiver, filed his supplemental and amended petition, claiming from the city $740,106.-54 and interest on account of said taxes. It was admitted that Harrison, the original plaintiff, was, when this suit was brought, a citizen of Mississippi; that he died December 30, 1890; that the receivership remained vacant until December 22, 1899, when, on the application of the city of New Orleans, the present plaintiff, Hubert, was appointed receiver by the civil district court for the parish of Orleans, La., and that he duly qualified; that Hubert is a citizen of Louisiana, and the Board of Metropolitan Police was also a citizen of Louisiana. There was evidence showing the receivership proceedings in the state courts. The city filed an exception to the supplemental and amended petition of the receiver, Hubert, which was tried by a jury. The court directed a verdict for the city, and dismissed the suit for the reasons stated in the opinion. Further facts concerning the litigation are stated in State ex rel. Brittin et al. v. City of New Orleans, 43 La. Ann. 829, 9 South. 643.

PARLANGE, District Judge. The exception to the supplemental petition of Louis A. Hubert, receiver, is virtually founded on two grounds, viz.: First, that this court has no jurisdiction, because the parties on both sides are citizens of Louisiana; second, that Hubert, the receiver, is not authorized to bring the suit. It was conceded that the parties are citizens of Louisiana, and, there being no conflict of evidence, cross-motions to direct a verdict were made, and the court directed a verdict in favor of the exceptor, the city of New Orleans, and against the plaintiff. In accordance with the verdict, the court has sustained the exceptions, and dismissed the suit without prejudice. I am clearly of opinion that as Hubert, the present receiver, is a citizen of Louisiana, he cannot prosecute the suit against the city of New Orleans, which is also a citizen of Louisiana. Harrison, the deceased receiver, was, it is true, a citizen of Mississippi, but, the appointment under which he claimed the right to prosecute suit No. 11,899 in this court having been annulled by decree of. the Supreme Court of this state (State ex rel. Brittin v. City of New Orleans, 43 La. Ann. 829, 9 South. 643), and his authorization to prosecute that suit in this court having also been annulled, it is clear to me that Hubert can claim no standing in this case because of the citizenship of Harrison. No benefit can result to Hubert from a suit by Harrison as receiver under an unlawful appointment. That the counsel who brought suit No. 11,899 were convinced that it virtually went out of existence because of the decree of the Supreme Court of this state and the annulment of Harrison's authorization seems to be plainly shown by the fact that for more than 10 years no step was taken in the suit. The Supreme Court of this state virtually said concerning Harrison: "The order enlarging the powers of the receiver in this case was practically a new and distinct appointment." If the conferring of the enlarged powers on Harrison in 1890 constituted "a new and distinct appointment," the same result followed the appointment of Hubert December 22, 1899, under the same enlarged powers. The supplemental petition must be considered as a new suit brought by a receiver who is a citizen of Louisiana, and therefore this court has no jurisdiction in the matter. I believe, as did the Supreme Court of this state, that the enlargement of Harrison's powers constituted a new and distinct appointment. But it should be noticed that, even if that view is incorrect, the result, so far as the matter in hand

is concerned, would be the same; for, even if the order enlarging Harrison's powers did not constitute a new appointment, it was, at all events, his only source of authority for prosecuting suit No. 11,899, and the question then would be whether, Harrison's capacity and authorization to prosecute the suit having been annulled, Hubert can now, many years afterwards, claim a standing in this court because Harrison, at the time he brought the suit, was a citizen of Mississippi. Clearly, he cannot do so. It should be noticed that Harrison brought suit No. 11,899 before the enlargement of his powers.

I have considered carefully the cases cited by the receiver's counsel in support of the jurisdiction. In my opinion, none of them apply to the matter in hand. It may well be, under those authorities, that if Harrison had brought suit No. 11,899 by virtue of a lawful appointment as receiver, and with due authorization from the court which had appointed him, and the appointment and authorization had not been annulled, this court would not be divested of its jurisdiction over the case by the mere fact of his death; and that Hubert, although a citizen of Louisiana, could prosecute the suit. But such a situation would be radically different from the one presented in this matter. The annulment of Harrison's second appointment, and of his authorization to prosecute suit No. 11,899, left nothing of that suit to which Hubert can now lay claim to maintain the jurisdiction. If Harrison were alive, he could not prosecute the suit. The annulment of his appointment and authorization operated virtually the dismissal of the suit, and it may be—though the point need not be decided—that Harrison's second appointment was void ab initio. It is obvious, of course, that Harrison's death could not put Hubert in a better position than Harrison with regard to the litigation instituted by Harrison.

Even if Hubert were a citizen of another state than Louisiana, and the court had jurisdiction, the suit would have to be dismissed, because Hubert has not been authorized to bring the suit. The authorization of Harrison concerning suit No. 11,899 was specially annulled by the state court on January 9, 1891, and, besides, the annulment of Harrison's second appointment put an end to the power and authority to prosecute the suit. Therefore Hubert can claim no authority to sue in this court by transmission from Harrison. The only contention with regard to the question of Hubert's authorization is that his power to sue in this court results from the terms of his appointment. On December 22, 1899, he was appointed by the state court "receiver of the Board of Metropolitan Police, to succeed R. F. Harrison, deceased." On November 20, 1900, his powers were enlarged by the state court "so as to include all of the assets, claims, and taxes owned and controlled by or due to the said Board of Metropolitan Police prior to 1879." Harrison was appointed receiver in 1877, and "authorized to demand and receive from J. C. Denis, Esq., administrator of finance of the city of New Orleans, or from said city, or any other person, any and all sums which may have been or may hereafter be collected or received for or on account of the metropolitan police tax for the years 1874, 1875, and 1876." It is evident to me that Hubert has not been authorized to sue, and it would seem that the learned counsel who represented Harrison did not believe that Harrison could sue under the terms of his appointment, for, before suing in his behalf in the state court, and subsequently in, order that he might proceed with suit No. 11,899 in this court, they sought and obtained the authorization of the state court which had appointed Harrison. "A receiver may not bring any suit without first obtaining leave to do so from the court which appointed him. This rule is universal in the absence of statutory provisions changing it. * * * It has become customary, in order to avoid the necessity of frequent applications, for the court to give the receiver general leave to bring suits. If such authority is not given in the order of appointment, it may be confirmed [conferred?] by a subsequent order." Am. & Eng. Ency. Law (1st Ed.) verbo "Receivers," vol. 20, pages 229 and 230. Also, as to the necessity of general or special authorization, and, incidentally, of averment by a receiver of his authorization, see Gluck & Becker on Receivers, § 46, and notes.

The order of the state court appointing Hubert and the subsequent order of the same court enlarging his powers do not refer in terms to the order appointing Harrison in 1877, but, even if they had, Harrison was only authorized "to demand and receive" from any person the taxes of 1874, 1875, and

1876, then collected or afterwards to be collected. This gave him no power to sue, and, as already stated, he was aware of the fact, and sought and obtained the court's authorization with regard to the two suits which he instituted—one in the state court, and suit No. 11,899 in this court. In any event, Harrison's first appointment did not refer to the assessments which are sued for by Hubert. In Screven v. Clark, 48 Ga. 41, the order appointing the receiver recited: "He is hereby ordered to collect immediately all of said property together, and hold the same subject to the further order of the court." It was held that this conferred no authority to bring suit. In the same case the court said: "The rule is perhaps an arbitrary one, but is, nevertheless, well settled, that a receiver has no right to sue without express authority from the chancellor. His general authority to collect and keep the assets is not sufficient to justify him in bringing an action. A receiver is at last only an officer of the court, and the foundation of the rule probably is that it is always for the court itself to determine whether it shall be dragged into litigation. At law, the party having the legal right to sue is the proper party, and if one comes suing for the property of another he must show, as part of his right to recover, the authority he has to come into a court of law asserting another's right. We think this failure to show any authority to sue is fatal to the case of the plaintiff below." The only case cited by plaintiff's counsel, which, in my opinion, bears on the question of authorization is Helme v. Littlejohn, 12 La. Ann. 298, decided by the Supreme Court of this state. With great respect for the opinions of that high tribunal, it may be said that the case seems to stand singly and alone. It was decided in 1857, at a time when the law of receiverships was almost unknown in Louisiana. It is but recently that legislation on the subject of receiverships has for the first time been enacted in Louisiana. Under the circumstances it seems to me that the case cannot control as against the universal rule that receivers must be authorized to sue, either specially or generally.

Chas. Louque and Rouse & Grant, for plaintiff in error.

Frank B. Thomas, Asst. City Atty., for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PER CURIAM. A majority of the court is of the opinion that the judgment of the Circuit Court is right, and it is therefore affirmed.

---

BEST v. KESSLER.

(Circuit Court of Appeals, Seventh Circuit. April 12, 1904.)

No. 1,002.

1. LIBEL—DAMAGES—EVIDENCE ON QUESTION OF REPUTATION.

Where plaintiff in an action for libel took the stand and testified as to his standing and reputation in the community, a cross-examination, which elicited the fact that he had been a gambler for large stakes, and other facts which would tend to affect his reputation, was proper and pertinent to the issue on the question of damages, and the exclusion of such cross-examination from the jury on such issue, while the direct testimony was allowed to stand, was error.

2. APPEAL—ASSIGNMENT OF ERROR—SUFFICIENCY.

The rule of the Circuit Court of Appeals which requires an assignment of error relating to the charge of the court to state distinctly the grounds of objection, does not require the court to refuse to consider an assignment which merely sets out the language objected to, where the objection as clearly appears from such language as it would if the assignment were further elaborated.